District Court abused its discretion by finding the recently decided and controlling Louisiana Supreme Court case of Farrell v. Circle K, which is a premises liability decision, found that irrelevant to the determination of Mrs. Mackey's motion to reopen her case, also a The district court believed Farrell was irrelevant because, quote, it did not change Louisiana law on pavement deviations. But there is no Louisiana law on pavement deviations, and Farrell exposed that any such assertion represents a conflation of the duty and breach elements of Louisiana's negligence analysis. The conflation is problematic because, as this court is aware, duty is a question for the court, whereas it's a legal question for the court, whereas the question of breach is a question of fact to be determined by the fact finder at trial. How did this conflation happen? In Farrell, the Louisiana Supreme Court took responsibility for the problem by admitting that it had made inaccurate statements in its prior premises liability decisions, including two recent, relatively recent, cases involving motions for summary judgment. Given the problem that was created by the Louisiana Supreme Court, it's not surprising that the district court in this case, and even this court in multiple decisions pre-Farrell, relied on and adopted some of these erroneous statements conflating duty and breach. Back to the case that we're here for today, this led to the assertion by the district court of the so-called Louisiana law on pavement deviations, which I consider to be the ultimate conflation, because by doing that, the court was basically saying that there was no duty, when in fact he was making a determination that there had been no breach. And by doing this also, he was trying to establish a categorical rule that a pavement deviation of less than two inches, as in my client's case, was as a matter of law, not unreasonably dangerous. And that is completely contrary to what Farrell established by overruling and repudiating the no duty rule. Some information that is consistent with the idea that this is an issue of a no duty rule, which again, repudiated by Farrell, is that American multi-cinema. This is the second go-round for this case, right? Yes, Your Honor, it is. All right, so what's the difference? The first time on the basic facts, it was appealed here, and no relief, right? Your Honor, this court affirmed the district court's decision granting American multi-cinema this motion for summary judgment. The difference this time is... Your Honor, Farrell is a sea change in your favor, that's what you are... Absolutely, Your Honor, it most definitely is, because it repudiated the no duty rule, which the district court relied on. The district court relied on this court's unpublished decision in Buchanan. Buchanan itself is a no duty holding. It basically said that there is a certain amount. These are not unreasonably dangerous as a matter of law. So given the change, we actually had our case. It was still pending review in the U.S. Supreme Court, and when that happened, just a few weeks before, Louisiana Supreme Court issued Farrell, and that's when we actually requested. We filed a supplemental brief, and the Supreme Court requested a GBR order. Unfortunately, it was a long shot, it didn't happen, but within a reasonable time, we exercised our right under Rule 60B6 to reopen the case because of a change in decision law. And the precedents of this court, including Batts and other decisions cited in my brief, give us, provide for the opportunity to do that when there is a change in decision law. So continuing, AMC in its original motion for summary judgment, they had argued as a matter of law. They didn't argue that the determination of whether the trip and fall, they didn't say that that was a breach. They said as a matter of law, because the defect was less than a certain amount, automatically, categorically, that was not an unreasonably dangerous condition. Help me remember what your theory of liability is. Yes, Your Honor. Under Louisiana premises liability law... No, no, no, that's not what I'm asking. I'm asking you what was your theory of liability? That the theater, American Multicinema, they failed to maintain the sidewalk which was approaching the box office in a reasonably safe condition. That a defect that violated multiple safety codes, as testified to by our expert in his affidavit, which was attached to our opposition to summary judgment, violated multiple safety codes that this created an unreasonably dangerous condition. Especially under the circumstances at the time, it was raining and the condition was obscured. Also, the evidence that was presented in our opposition to summary judgment demonstrated that the area had not been pressure washed. It was very difficult to discern that there was an actual deviation at that point. And by the way, under Farrell now, you can't consider the plaintiff's awareness of the condition. So that's something that the court, although most definitely did, in granting AMC's motion for summary judgment. Yes, Your Honor. You answered my question, sorry. The question I had is, did the plaintiff claim that her view was somehow obscured or she couldn't see the problem because of the drizzle or the unpressurized condition of sidewalk? And the answer is no, she just said. She didn't claim that because she didn't see it. She was paying attention, watching as she was going. It was an umbrella. But the expert in his report detailed all the findings. So there was a photograph that was attached to the Fifth Circuit opinion. It showed the conditions under a dry situation, sunny conditions. You can sort of see how dirty everything is. And then there is the lighter color around the area of the expansion joint. That was not the condition on the day of the accident. The condition would have been all wet. We attached those to our opposition. It certainly created a disputed fact as to whether this condition was observable by all comers, which is what the Supreme Court had said in its prior precedence. So returning additional information showing that the Louisiana law of payment deviations was really no-duty determination is that the judge, the district court, in its decision did not say one time breach. Breach is not mentioned one time in the opinion. American multi-sentiment did not argue breach. Breach is the requirement to locate the risk utility balancing test. It is located within the breach element. And that is, of course, that is for the fact finder. Unless no reasonable juror could find that the condition was not unreasonably dangerous. The, a few other things, Your Honors, I'd like to, I was thinking about this in preparation. Maybe it hadn't occurred to me before. But if there is a Louisiana law of payment deviations based on some older Supreme Court cases, where after trial on the merits, four of the Supreme Court cases were trials on the merit. And in those cases, they said various deviations, less than a certain amount. Under all the facts of those particular cases, those were not unreasonably dangerous. But if there is a law of payment deviations, well, then Farrell, the woman who slipped in the puddle, this is the most recent decision in the Supreme Court, then that means there is now a Louisiana law of slip and falls and standing water. And then Broussard. Broussard was the elevator case that prior to Farrell, that was the controlling precedent, which unfortunately got confused by the Supreme Court's errors, which they admitted. But Bufkin, does that mean that there is now a Louisiana law of elevator defects, when there is a difference, when the elevator doesn't stop level on the floor? And then lastly, I would throw out Bufkin. Bufkin is the Louisiana Supreme Court case where it did create a confusion about no duty. This was a man who was crossing the street in the French Quarter. There was an obstruction at the corner. A bike was going the opposite direction. He didn't see the bike, and he was hit and injured. Does that mean that there is a Louisiana law of dumpster obstruction cases? Most definitely not. The only thing that is certain in this analysis is that in order to determine whether a condition is unreasonably dangerous, you have to consider the duty risk, the risk utility balancing test, which has four factors. And of course, the major factor, the one that is at issue here, and was at issue in the summary judgment, was the second factor. And that is the likelihood and magnitude of the harm, including the openness and obviousness of the condition. What the Supreme Court caused confusion about is it indicated, it's made this statement, which was wrong. It said that when a condition is open and obvious, it is not unreasonably dangerous. And therefore, the defendant has no duty to correct the condition. So it turned a breach analysis, the risk utility balancing test, into a no duty, which again, is a legal issue for the court. Where in Farrell does it change the Louisiana law vis-a-vis pavement deviation liability? Well, Your Honor, so Farrell does not specifically address pavement deviations. Okay, then how was it a sea change in the law? It's a sea change in the law. Farrell was a summary judgment case, wasn't it? Farrell was a summary judgment case. My recollection, the Supreme Court talked about when, what part of the analysis in the Louisiana duty utilities analysis, where within the analysis, the openness and obviousness is considered. But I just, I didn't see it. And Judge Ash said that there was no change in the law vis-a-vis pavement deviation liability. So thus, there was no change in the law. And so your argument keeps being about conflation of principles. But how does, well, you just said, Farrell doesn't deal with pavement deviations. It doesn't, Your Honor. So what's the basis that gets you past the summary judgment? Judge Ash read it. He had denied it before. He said, Farrell does not alter the law on pavement deviations. You just acknowledged that he didn't. So I'm just, I don't really understand what you're saying about conflating principles. Your Honor, so to be clear, Farrell did not specifically address pavement deviations. It was a case of- And Farrell was a summary judgment case. So the Supreme Court did not abrogate some, you know, you can't handle this in a summary judgment context. So Farrell did a couple of things. It made clear that in a summary judgment context, you cannot consider the plaintiff's awareness of the condition. Judge Ash, in his decision granting the summary judgment, considered my clients. He said it was plainly observable under the circumstances. And by the way, that one of the biggest problems is if it was really a breach determination by Judge Ash, then he would have had to consider my client's evidence, not just consider it under the Fifth Rule 56 jurisprudence. He would have to give credence to that. But he didn't consider any of the evidence. We had 19 exhibits. Not one exhibit was mentioned. And then he weighed evidence. He focused on certain testimony and disregarded others. So that's all part of the risk-utility balancing test, which is a fact-based analysis. Judge, if you don't mind, I would refer you. So in my brief, there are numerous Louisiana Supreme Court cases which talk about the standard for granting a summary judgment. I'm sorry, the standard with a risk-utility balancing test. I mean, I'm very clear about those. Way back in an ancient day, I took the Louisiana bar exam. I mean, you know. Yes. I don't do it on an everyday basis. I'm not being flipped with people. I mean, I get it. But I'm just trying to understand the conflation that you're arguing. And I really was trying to understand. That's why we set the case for an argument. Trying to understand what the theory of liability, because you're saying she didn't argue that she didn't see whatever was there because of rain, because of drizzle, because of fog, et cetera. So it sounded, when I first read it, as if you're arguing a strict liability, that because the pavement was elevated to a point, it doesn't matter if she couldn't see it. Ifso facto, the theater is liable. Now, I know you're not exerting strict liability, but that's what it sounded like. And that's why I kept asking you, what was the theory of liability? Not what the law is, but what is your theory of liability that gets you into saying Farrell is a C-chain, therefore, I should get out of some of this? That's the part I'm missing. Well, what I would say is all premises liability cases are governed and controlled by Farrell. Because the Farrell case addresses how do you determine whether a condition is unreasonably dangerous at the summary judgment stage. The other cases were all decided at trial. And trial decision, which is a manifest error standard, all these other decisions, Reed v. Walmart, Boyle v. LSU, Chambers v. City of Morroville, all those were decided at trial. And the court weighed evidence. You can't weigh evidence at a summary judgment. And you can't take a precedent. I believe my time's expired, but I'll reserve it. Last question. Are you arguing that Judge Ash didn't consider the motion for summary judgment and the like most favorable to your client? Or are you arguing that Judge Ash erred as a matter of law because of this conflation that you're arguing? Which is your argument? He erred as a matter of law because he considered this was a no-duty analysis. Basically, less than two inches, categorical rule, there's no liability. That's essentially what he said. Your Honor, I'm struggling with it. The Supreme Court of Louisiana and Farrell, even though they moved it into the breach category, still held as a matter of law that the condition at the Circle K place was not an unreasonably dangerous condition. And it seems to me that's pretty much on all fours with the facts of this case. So, Your Honor, that's the confusing thing. And so, I'm not a scholar in this area, but I did read Professor Galligan's article. And quite honestly, I think I understood it much better. You know, if you read that, I think he makes it very clear what's going on. You cannot at the, well, in Farrell, so yes, they ultimately concluded that there was, they, No breach of duty as a matter of law. They found no breach of duty. Based on the factual. Based on the facts of that case. It seems like those, factually, that case is pretty much the same as the defect here. Well, not really, Your Honor, because we had so much evidence. We had all these exhibits, expert testimony. We had standard operating procedures for five years showing that they had. But we're still on Rule 60B here. I mean. Yes, yes, and Your Honor. This is not so clear to me that the district court abused its discretion. Your Honor, so it's correct that under Rule 60B, we're not supposed to look back and reopen and relitigate. There's no doubt about that under 60B. But to understand the judge's legal error in applying, in basically coming up with a no duty holding, you have to consider what are the facts that were before the court. Again, I believe I'm. You've saved some time for rebuttal. Thank you, Your Honor. Good morning, Your Honors. Philip Watson for American Multicinema. I hope I will not take up too much of your time. Um, Your Honor, Judge Stewart, if I can address your point, I think I hear what you're saying and what you are asking about this question of conflation. But ultimately, it doesn't matter because the basis of the case has nothing to do with the conflation the Supreme Court was worried about in Farrell. Too often, courts have looked at open and obvious. This very particular defense, right? There's a puddle right there. You should have seen the puddle. You shouldn't have stepped in the puddle. That's on you. It's not on the premises owner. Too often, courts were saying, ah, so because it was open and obvious, you had no duty to warn. You had no duty to clean up the water. You had no duty to sweep it away. That's what Farrell was telling us was a mistake. Farrell is saying, no, no, it's not a question of duty. It's a question of breach. Was that puddle unreasonably dangerous? Was it likely to cause harm? What was the magnitude of harm? Was it open and obvious such that somebody shouldn't have tripped in it? That's where that analysis should be confined, and that is exactly why they put it into there. When they did it, they also said, hey, but you can still have situations where summary judgment can be granted, like Farrell, Judge Stewart. They looked at it and still said, it's a puddle of water. You shouldn't walk through it. So that's exactly what happened. Judge Richmond, to your point, I think that's exactly right. It's on all fours because that's very similar to what the court did here. But what is so critical and why Farrell really has no bearing on what we're doing here today, Your Honors, is that ultimately the reason why AMC moved for summary judgment, the reason why Judge Ash granted summary judgment, the reason, Your Honors, and the Fifth Circuit affirmed that decision had nothing to do with open and obvious. Farrell was concerned the idea that it's a sea change. It may be as to that where you confine or where you analyze the open and obvious question. The actual facts and the reason for the motion was that, yes, as a matter of law, these pavement deviations do not create an unreasonable risk of harm. That is a question of breach. Because it's an unreasonable risk of harm, was AMC in the wrong for not correcting it, for not repairing it, for not warning about it? But when, as a matter of law, it doesn't create an unreasonable risk of harm, you can't put it on the landowner. You can't say it's the premises owner's fault or that they breached some obligation because they didn't do anything about it. Your Honors, when Judge Ash talks about this Louisiana law on pavement deviations, the appellant seems to be saying, my goodness, what a sea change that's a completely different, now we've got a brand new law. No, all he's saying is there's a body of jurisprudence that's built up about the fact that when you have an inch of deviation, we live in South Louisiana, you're going to get soil undulating. You're going to get these differences. The premises owners are not the guarantors of the patron's safety. You cannot guard against every single thing. And so, as a matter of law, if these deviations don't create an unreasonable risk of harm, then you don't have a situation where there can be a breach. No rational trial or fact can get there at a trial. Bingo, you got summary judgment. And that's why we're here. That's why FARO has nothing to do with what we're talking about. While it might have been concerned about the conflation of duty and breach in the open and obvious context, we don't have that in this case. There was a kind of a somewhat of an irony. I remember when we moved for summary judgment the first time, the appellant opposed and the appellant pointed out in the opposition, nowhere in the original motion does AMC bring up open and obvious. That's right. This isn't an open and obvious case. It has a flavor of that. But the bulk of what we were talking about was, look at all of the case law for 20, 30, 40 years. You're going to see that these deviations below an inch and a half, below two inches, do not create an unreasonable risk of harm. That is purely a breach analysis. Duty doesn't come up at all in my motion, in Judge Ashen's original MSJ grant, or in the Fifth Circuit's affirmation. So the idea that FARO has any bearing on this case is simply inaccurate. There was a comment made, I believe, during the appellant's argument that AMC didn't argue a breach. That's all we argued, just to be totally clear. Your Honor's Rule 60, which is why we're here, right? The question of this body of evidence and standard operating procedures. We're past that. The Fifth Circuit has already looked at all that and affirmed Judge Ashen's ruling. So what we're here about is Rule 60. Rule 60 has 12 factors that I do not remember, can only run off the top of my head, but it has many factors. But the thrust of it is, is they can only be granted when there are extraordinary circumstances. You know, substantial justice requires us to step in. And when that Rule 60 motion is rolled upon, Your Honors in the Fifth Circuit review that on an abuse of discretion. There is nothing that has been presented by the appellant. No case law, no authority, no argument to suggest that when Judge Ashen looked at Farrell and said, that's a no but an obvious case. I have a case about breach and the reasonable risk of harm. That doesn't change anything. There are no extraordinary circumstances. In no way is that an abuse of discretion. I would argue to Your Honors, there are no circumstances that would justify Rule 60, let alone extraordinary circumstances. So the idea that Farrell is any kind of sea change or game changer, I think is completely incorrect. And therefore that Rule 60 motion was correctly decided. Just a couple of other comments, Your Honors. And I think I'll get out of here with quite a bit of time left for you all. Kind of the wacky posture of the case means that Farrell, as a basis to review what the lower courts had already done, has actually already been reviewed by the court higher than this one, the Supreme Court. It was kind of a funny timing, but we went from MSJ to Fifth Circuit affirmation to then an application for writ of certiorari to the Supreme Court. While that was pending, Farrell was issued. Farrell, I'm sorry, was issued. And at that point, the plaintiffs didn't come to it later. They were very quick to find that case and immediately supplement their brief to go to the Supreme Court and say, listen, this is yet another basis for you to review this case. The Supreme Court denied writs. The pushback in the briefing is, that doesn't mean that the Supreme Court looked at the merits of the case. I completely agree with that. Nobody is suggesting they looked at the merits, but they had an opportunity to look at Farrell and say, hey, does this warrant? Is this a reason for us to look deeper into this? Is this a reason to suggest that maybe the lower courts did get this wrong? Or not that they got it wrong, but because the Supreme Court has now put that out there, that there would have been a different outcome. The Supreme Court had every opportunity to do that. They did not. So is that controlling precedent or controlling authority? I don't think it is, Your Honor, to be totally fair. But I think it's pretty persuasive. They looked at this, they had an opportunity to- How is it persuasive if it's not merits-based? I just, I'm sorry. Well, persuasive- That really helps you. Yes, ma'am. I understand that. I guess my point is that I don't think the idea of saying, hey, you should look at Farrell, because Farrell would be not a merits decision so much, but it's a reason for you to question whether the legal analysis was correct. But why does what the Supreme Court did matter? I mean, the U.S. Supreme Court. I mean, why does it really matter? Well, it doesn't in any controlling or authoritative way, Your Honor. So I'm only throwing it out there as it's just kind of a quirk of the case. Well, it's a quirk. I agree. So let's move on. Yes, ma'am. Fair enough. And then, Your Honor, the only last thing, the piece of this I would say is that, you know, if you remember, I made a point earlier about open and obvious not being the focus, literally, when this circuit affirmed Judge Asch's imache, it had a comment in there about how open and obvious is confined to a stray sentence and a footnote at the end of his opinion. And he has something in there about how this was a something about, I believe it was totally apparent, or it was spatially apparent to all the pedestrians who would come by, including Ms. Mackey, who had said that she was, you know, walking and carefully watching where she was going and things like that. So even to the extent the lower court looked at open and obvious, or to the extent that that was a basis for them to grant summary judgment in my client's favor, they still looked at it in the proper way, in the context of breach, which is what Farrell tells us to do now. If the court in that footnote had said, hey, this is a very facially apparent condition, and it was obvious to everyone who passed by, and therefore AMC owed no duty, they might have a point. There might have been that conflation. There was none. The court confined that to where it was supposed to be. And again, if you look at this abuse of discretion, extraordinary circumstances, there's just nothing in Farrell that is really focused on those issues and those conditions that actually speaks to anything the trial court did. The Rule 60 motion was properly decided. We would ask for it to be affirmed. We would ask for the appeal to be dismissed at the appellant's cost. Unless there are any other questions, I will yield my time. And I thank you all very much. Okay, a lot to cover in five minutes, but I'll do my best. So one of the last comments addressed about Farrell is only applying to open and obvious situations, but in the context of whether there's conflation. Yes, that was the context there. Because the condition was open and obvious, it was not unreasonably dangerous. Therefore, there was no duty. That was the specific no-duty repudiation in Farrell. But Farrell also said that it's not just open and obvious conditions that could be conflation, that can constitute conflation conditions. The quote from Farrell is, conflation is tethering the existence of a duty to the determination of whether a condition is unreasonably dangerous. Doesn't say anything about open and obvious. Open and obvious is just one of the factors to consider under the second element of the risk utility balancing test. The BATS is asked to whether there is a basis, extraordinary circumstances. This court's precedent in BATS, several other precedents cited in my brief, clearly say that when there's a change in decisional law, that that is an extraordinary circumstance. As long as the case is still open on appeal, which my case was. Certainly, if the law changes after the appeal is exhausted, the case is completely over, yes. Then 60 v. 6, that's not extraordinary circumstances. But my case is one of those rare, very rare situations where the law changed in my client's favor while the case was still alive, only because we were pending review in the U.S. Supreme Court. But I was trying to finish off at the end, when my time was up. I was trying to emphasize how the Louisiana Supreme Court cases have repeatedly emphasized the fact-intensive nature of unreasonable risk of harm analysis. This goes back to Broussard. In all of the cases cited by Judge Ash, Chambers, Reed, and Boyle, there is no fixed rule. It is not a simple rule of law which can be applied mechanically. There is no bright-line rule. There is no calculus, and the calculus remains amorphous. It goes on and on and on. Again, what the district court did, he made a categorical rule, which, even though that was supported before Farrell, it most definitely is no longer supported, because there is no such thing as a categorical rule. That is just, it's not allowed for. Um, what else here? If I understood the comment, Philip, did you say you argued breach below? Oh, you don't get that. I'm sorry, Your Honor. My apologies. I was trying to, I thought he said that they did argue breach below, but if you should- Just make your argument. Yeah, my apologies, Your Honor. Perhaps I misunderstood. I thought he said that they did argue breach, but when I looked at their motion for summary judgment, I didn't see breach anywhere in there. They argued it as a matter of law, that there was no duty, and they cited to the Chamber's case. They said because the condition is less than one and a half inches, then as a matter of law, you're less, therefore, the condition cannot be unreasonably dangerous. That's exactly what Farrell said. Cannot be unreasonably dangerous because of these facts. That's not arguing- Duty, they're just saying no breach here. To me, that's totally- So Farrell, the Supreme Court on Farrell is reviewing the breach. They're looking at it after, and they did sustain, find the summary judgment was appropriate under the facts of that case, under a breach analysis. But again, Judge Ash did not perform, did not look at this as a matter of breach. If he would have looked at it as a breach, he would have considered and given credence to some of our evidence, and then there would have been a dispute of fact. And certainly, based on some of this evidence, a reasonable juror could find that the condition was unreasonably dangerous, which is all that is, which is now required by Farrell. You have to use the reasonable person standard. I'm running out of time, Your Honors. I appreciate your hearing my argument. Again, I would refer you to the Galligan article, which makes it most clear what is really going on in terms of this idea of conflation. And the Supreme Court went out of its way. It's kind of shocking that a high court would apologize. They didn't apologize, but they said, we are responsible for all this confusion. And they cited the numerous cases that are out there that resulted in these confusing or inconsistent results. Your Honors, I would urge you, based on all the argument today in my briefs, that you reverse the judgment of the order of the District Court denying the motion for relief from judgment and vacate the District Court's order, granting the summary judgment and remand for further proceedings. And I thank you for your time. Thank you.